**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 23, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

STEPHEN LYLES,

        Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 04-7074
(D.C. No. 03-CV-418-W)
(E.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

Plaintiff Stephen Lyles appeals the district court's order upholding the

Commissioner's denial of his application for social security disability and

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

supplemental security income benefits. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

*Background*

Mr. Lyles claims disability since October 15, 1998, due to injuries sustained in a motor vehicle accident, including a fractured hip with sequelae, a splenectomy, hypertension, obesity, and depression. An administrative law judge (ALJ) held a hearing at which Mr. Lyles was represented by counsel. In addition to Mr. Lyles' testimony, the ALJ received testimony from a vocational expert about the jobs that could be performed by someone with Mr. Lyles' abilities and limitations. The ALJ applied the five-part sequential evaluation process. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing five steps). He determined at step two that Mr. Lyles did not have a severe mental impairment, and at step five that he retained the residual functional capacity (RFC) to perform a wide range of light-level exertional jobs that existed in the local and national economies.

The Appeals Council denied review, thus making the ALJ's decision the final decision of the Commissioner. *See Jensen v. Barnhart*, 436 F.3d 1163, 1164 (10th Cir. 2006). The district court affirmed the Commissioner's decision.

*Legal Framework*

We review the Commissioner's decision to ascertain whether it is supported by substantial evidence in the record and to evaluate whether she applied the

correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* We do not reweigh the evidence or retry the case, but we "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262.

In this context, "disability" requires both an "inability to engage in any substantial gainful activity" and "a physical or mental impairment, which provides reason for the inability." *Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (internal quotation marks omitted). The impairment must be a "'medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .'" *Fischer-Ross*, 431 F.3d at 731 (quoting 42 U.S.C. § 423(d)(1)(A)).

On appeal, Mr. Lyles asserts that the ALJ erred by failing to recognize his severe mental impairments and failed to develop the record on this point. He also contends that the ALJ failed to include all of his physical limitations in his RFC, because the RFC assessment did not properly consider his left elbow condition or his limited ability to stand or walk.

*Mental Impairments*

According to Mr. Lyles, the ALJ erred in finding at step two that he did not have a severe mental impairment. He maintains that the evidence of his mental impairment was sufficient to satisfy the step-two "de minimis" showing, *see Grogan*, 399 F.3d at 1263, and to trigger the ALJ's duty to develop the record.

The ALJ has a duty "to ensure that an adequate record is developed during the disability hearing consistent with the issues raised" in the nonadversarial setting of a disability hearing. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (quotation omitted). Even so, the burden is on the claimant to prove his disability. *Id.* "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Id.* at 1167 (citations omitted). If he does so, then the ALJ's duty to order a consultative examination arises. *Id.* "Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment." *Id.*

At the beginning of the hearing, Mr. Lyles' attorney requested more psychological testing for Mr. Lyles. The ALJ decided to go ahead with the testimony because it would help him decide whether further testing was indicated and, if so, what kind of testing was required. During the hearing, the ALJ invited

Mr. Lyles and his counsel to obtain and submit additional psychological documentation. The ALJ then ordered that the record be held open to permit the receipt of these records, and Mr. Lyles later provided them. Nevertheless, Mr. Lyles argues that the ALJ should have ordered further psychological testing.

The record evidence of Mr. Lyles' mental impairment consists of (1) two brief mentions of depression in October 1998 and November 2000, which we conclude are too remote in time and too brief to warrant consideration, (2) a mental status exam performed by Larry Vaught, Ph.D., on May 24, 2001, (3) a psychiatric review technique (PRT) form prepared by Janice Smith, Ph.D., on June 15, 2001, and (4) a mental RFC form prepared by R. Coffey, a licensed counselor, on February 6, 2003.

Dr. Vaught diagnosed Mr. Lyles with "Depressive Disorder, NOS," and "Social Anxiety (provisional)." R. at 285. He found that Mr. Lyles had mild difficulty in sustained concentration and persistence, and poor ability to perform calculations. He noted that Mr. Lyles reported that his social anxiety did not prevent him from working. He concluded that Mr. Lyles' functioning was normal in the areas of short-term memory, abstraction, and judgment for hypothetical situations.[1]

---

[1]    Mr. Lyles asserts that Dr. Vaught's opinion is not complete and therefore is not persuasive. Because he does not explain why, we decline to consider this argument. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1232 (10th Cir. 2003) (holding unsupported appellate argument insufficient to invoke appellate review).

Dr. Smith likewise opined that Mr. Lyles suffered from "Depressive Disorder NOS," *id.* at 290, and "Social Anxiety (Provisional)," *id.* at 292. She found no more than "mild" functional limitations, *id.* at 297, and concluded that Mr. Lyles' mental impairment was "nonsevere," *id.* at 301.

We next consider the mental RFC assessment prepared by Mr. Coffey. Although he stated that Mr. Lyles had mild, moderate, or marked limitations in all areas of functioning, the ALJ properly discounted or disregarded this opinion for two reasons: first, Mr. Coffey's opinions were not accompanied by a rationale or diagnosis, and second, he was not an "acceptable medical source," *see* 20 C.F.R. §§ 404.1513(a); 416.913(a) (listing types of medical sources who can provide evidence of medically determinable impairments). In addition, Mr. Coffey's opinion differed from those of Drs. Vaught and Smith.

Mr. Lyles testified about his mental impairment. He stated that he took medication that improved his mood swings, although he continued to have nightmares every two or three months. In addition, he became nervous in crowds and around strangers. Even so, he was able to go shopping and attend church.

We conclude that the ALJ's determination at step two that Mr. Lyles' mental impairment was not severe is supported by substantial evidence in the record as a whole. Neither of the "acceptable medical sources," Drs. Vaught and Smith, indicated that Mr. Lyles had a severe mental impairment, and the ALJ properly discounted Mr. Coffey's opinion. *Cf. Branum v. Barnhart*, 385 F.3d

1268, 1272 (10th Cir. 2004) (noting consultative psychological exam required where only other records did not come from an acceptable medical source).

We also determine that the evidence of Mr. Lyles' mental impairment was insufficient to trigger the ALJ's duty to develop the record further than he did when he received the additional psychological evidence following the hearing, because the evidence before the ALJ did not "suggest a reasonable possibility that a severe impairment exist[ed]." *Hawkins*, 113 F.3d at 1167 (citations omitted).

*Physical RFC*

Mr. Lyles next argues that the ALJ erred by not including all of his physical limitations in his RFC determination. Specifically, he maintains that the ALJ failed to consider the limitations imposed by his left elbow, and that the RFC for light work requiring an ability to stand or walk for six hours in an eight-hour day disregarded his treating physician's opinion that he could not "be on his feet all the time." R. at 245.

The record establishes, as the ALJ recognized, that Mr. Lyles sustained a ligamentous injury to his left elbow in the 1998 car accident. This injury caused degenerative changes with stiffness and limitation of motion, as diagnosed by Drs. Allard, Taylor, and Elliott. But no medical expert indicated that this condition was disabling. To prove disability, a claimant "must furnish medical and other evidence of the existence of [a] disability." *Branum*, 385 F.3d at 1271;

*see also Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (reviewing medical evidence, noting that no physician had stated claimant was disabled).

Moreover, although Mr. Lyles testified that his left elbow condition prevented him from lifting a fifty-pound bag of cattle feed, the ALJ's RFC assessment required him to lift and carry up to twenty pounds occasionally, and ten pounds frequently. Further, Mr. Lyles testified that he could lift twenty pounds for one-third of a work day and that he could lift the fifty-pound bag of cattle feed with his right arm. Accordingly, we conclude that although Mr. Lyles had degenerative changes in his left elbow that caused stiffness and limited the range of motion, he failed to meet his burden to show that this condition was disabling.

Finally, we address Mr. Lyles' challenge to the ALJ's determination that he could "sit, stand or walk up to 6 hours in an 8 hour work day." R. at 23. We first reject Mr. Lyles' interpretation that the ALJ left two hours of the work day unaccounted for. Rather, we conclude that the ALJ determined that Mr. Lyles could stand or walk for six hours, with normal breaks; the remaining work time would be spent sitting. This is the schedule indicated by Dr. Rutter's physical RFC assessment, which the ALJ gave "great weight" because it was consistent with the medical evidence of record. *Id*. at 18.

Mr. Lyles argues that the ALJ disregarded the opinion of his treating physician, Dr. Allard. In his report of April 1999, Dr. Allard stated,

it would be a great idea for [Mr. Lyles] to be able to go back to school and learn a trade that would not require him to be on his feet all the time. He has no particular restrictions . . . but I think it would be impossible for him to be on his feet 8 hours a day, 40 hours a week, doing any type of manual labor for any length of time.

R. at 245. Contrary to Mr. Lyles' assertion, the ALJ considered Dr. Allard's later opinion, made in October 1999, that Mr. Lyles had no particular restrictions. *Id.* at 16. That opinion concurs with Dr. Rutter's February 2003 physical RFC assessment which, in turn, is consistent with Dr. Feigel's June 2001 physical RFC assessment. Moreover, the ALJ "is not required to discuss every piece of evidence in the record" as long as he "discuss[es] the uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects.'" *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). We conclude that the ALJ's decision complies with this rule.

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge